FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 09, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LYDIA G.,[1]

                  Plaintiff,

      v.

FRANK BISIGNANO,
Commissioner of Social Security,

                Defendant.

No.  2:23-cv-03143-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

Due to arthritis, depression, pain throughout her body, dizziness and vertigo, cervical and lumbar spine conditions, right shoulder condition, obesity, and fibromyalgia, Plaintiff Lydia G. is unable to work fulltime and applied for disability insurance benefits and supplemental security income benefits. She appeals the denial of

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed the opinions and improperly assessed Plaintiff's credibility.  As is explained below, the ALJ erred when evaluating the medical opinions. This matter is remanded for further proceedings.

## I.    Background

In August 2011, Plaintiff filed an application for disability benefits under Title 2 and an application for supplemental security income under Title 16, claiming disability beginning November 16, 2008, based on the physical and mental impairments noted above.[2]

After the agency denied Plaintiff benefits, Plaintiff appeared before ALJ Larry Kennedy with her representative.[3] Plaintiff and a vocational expert testified.[4] After the hearing, ALJ Kennedy issued a

---

[2] AR 1429, 220, 221, 242.

[3] AR 41-96.

[4] *Id*.

decision denying benefits.[5] On July 2, 2015, the Appeals Council denied Plaintiff's request for review.[6]  Plaintiff filed suit in this Court and on January 19, 2017, Judge Lonny R. Suko issued a decision that found ALJ Kennedy's decision not supported by substantial evidence and remanded the case for further proceedings.[7]

Plaintiff appeared before ALJ Kennedy on October 22, 2018, for a second hearing pursuant to the remand order.[8]  Plaintiff testified and a vocational expert testified.[9]  On February 15, 2019, ALJ Kennedy issued an unfavorable decision.[10] Plaintiff filed suit in this Court.[11] The case was remanded for further proceedings pursuant to a

---

[5] AR 17-40.  Per 20 C.F.R. §§ 404.1520(a)–(g) and 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[6] AR 875-877.

[7] AR 881-899.

[8] AR 807-850.

[9] *Id*.

[10] AR 768-798.

[11] AR 1410-1411.

stipulated remand.[12] On January 28, 2021, Plaintiff appeared with her attorney for a hearing before ALJ Glenn Meyers (the ALJ).[13] Plaintiff testified and a vocational expert testified.[14] On May 20, 2021, the ALJ issued a partially favorable decision which found Plaintiff disabled on January 1, 2019.[15] Plaintiff requested review by the Appeals Council and on November 19, 2021, the case was remanded for further review.[16]

On June 28, 2022, Plaintiff's attorney appeared without her for a hearing before the ALJ.[17]  A vocational exert testified.[18] On November 22, 2022, Plaintiff appeared with her attorney for a supplemental

---

[12] AR 1412-1418.

[13] AR 1278-1305

[14] *Id.*

[15] AR 1425-1461.

[16] AR 1462-1468.

[17] AR 1306-1321.

[18] *Id.*

hearing before the ALJ.[19] Plaintiff testified and a vocational expert testified.[20] On December 21, 2022, the ALJ issued an unfavorable decision.[21]  The decision noted that the Appeals Council had affirmed the portion of the prior decision which found Plaintiff disabled on January 1, 2019, and the relevant period to be considered was the time period from the alleged onset date of November 16, 2008, through December 31, 2018.

For the relevant period, the ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[22] As to medical opinions: the ALJ found:

- The opinions of state agency evaluator Robert Hoskins, MD, entitled to little weight.

---

[19] AR 1322-1348.

[20] *Id*.

[21] AR 1241-1277.

[22] AR 1253.

- The opinions of state agency evaluators Jeffrey Merrill, MD, and Renee Eisenhauer, PhD, to be entitled to significant weight.

- The opinions of state agency evaluator Matthew Comrie, PsyD, to be entitled to little weight.

- The opinions of treating source Heather McClure, ARNP, to be entitled to some weight.

- The opinions of treating source Kyle Heisey, MD, to be entitled to little weight.

- The opinions of consultative examiner Cecelia Cooper, PhD, to be entitled to some weight.

- The opinions of state agency consultant Faulder Colby, PhD, to be entitled to little weight.

- The opinions of state agency consultant Myrna Palasi, MD, to be entitled to little weight.

- The opinions of state agency consultant Tae Im Moon, PhD, to be entitled to little weight.

- The opinions of treating source Debra Titus, MD, to be entitled to little weight.

- The opinions of treating source D. Joshua Miller, MD, to be entitled to little weight.

- The opinions of examining source, Wendy Eider, MD, to be entitled to little weight.[23]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff met the insured status requirements through June 30, 2011.

- Also at step one:  Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 16, 2008, through December 31, 2018.

- Step two: Plaintiff had the following medically determinable severe impairments: cervical and lumbar spine conditions, right shoulder condition, obesity, fibromyalgia, and depressive disorder.  The ALJ also found that vision disorders, acute gastroenteritis, wrist pain, and elbow pain were non-severe.

---

[23] AR 1259-1264.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC:  Plaintiff had the RFC to perform light work but with the following exceptions:

  she could lift and/or carry 10 pounds frequently and 10 pounds occasionally. She could understand, remember, and carry out simple instructions and tasks. She could use judgment to make simple, work-related decisions. She could have frequent contact with the public, coworkers, and supervisors. She could not perform overhead reaching. With the non-dominant right upper extremity, she could reach occasionally at or below shoulder level. With the dominant left upper extremity, she could frequently reach at or below shoulder level. She could frequently handle and finger. She could occasionally stoop, crouch, and climb ramps and stairs. She could not crawl or kneel, and could not climb ladders, ropes, or scaffolds. She had to avoid concentrated exposure to vibration. She could not work at heights or in proximity to hazardous conditions.

- Step four: Plaintiff was not able to return to her past relevant work as a certified nurse assistant.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a

marker (DOT 209.587-034), cashier II (DOT 211.462-010), and parking lot attendant (DOT 915.473-010.[24]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and later this Court.[25] On April 10, 2024, this Court entered an Order ruling that the ALJ's adoption of findings from a prior decision constituted an appointments clause violation, and reversing the ALJ's denial of benefits and remanding for further proceedings.[26] The Commissioner timely appealed the Court's ruling to the Ninth Circuit Court of Appeals.[27] On September 10, 2025, the Ninth Circuit Court of Appeals issued a decision finding in favor of the Commissioner and remanded the case back to this Court for a determination to be made on the merits.[28]

---

[24] AR 1247-1265.

[25] AR 1657-1665, ECF No. 1.

[26] ECF Nos. 18, 19.

[27] ECF Nos. 21, 22.

[28] ECF No. 28.

1

## II.    Standard of Review

2

3      The ALJ's decision is reversed "only if it is not supported by

4 substantial evidence or is based on legal error,"[29] and such error

5 impacted the nondisability determination.[30] Substantial evidence is

6 "more than a mere scintilla but less than a preponderance; it is such

7 relevant evidence as a reasonable mind might accept as adequate to

8 support a conclusion."[31]

9

10 _____

11 [29] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. §

12 405(g).

13 [30] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded*

14 *on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court

15 may not reverse an ALJ decision due to a harmless error—one that "is

16 inconsequential to the ultimate nondisability determination").

17 [31] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978,

18 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028,

19 1035 (9th Cir. 2007) (The court "must consider the entire record as a

20 whole, weighing both the evidence that supports and the evidence that

21 detracts from the Commissioner's conclusion," not simply the evidence

22

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### III.   Analysis

Plaintiff seeks relief from the denial of disability on two grounds. She argues the ALJ erred when evaluating Plaintiff's subjective complaints, and when evaluating the medical opinions.  The Commissioner argues there was no error because the ALJ properly evaluated Plaintiff's subjective complaints and considered that the medical record and Plaintiff's daily activities were not consistent with her allegations and a medical source suspected malingering, and that the ALJ properly evaluated the opinion evidence.  The Court disagrees with the Commissioner. As is explained below, the Court finds that the ALJ's consideration of the medical opinion evidence might have satisfied the current regulations but does not satisfy the more stringent prior regulations that apply in this case.

---

cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

## A.     Medical Opinions: Plaintiff establishes consequential error.

Plaintiff argues the ALJ erred by discounting the medical opinions of both treating medical sources and examining sources and instead gave greater weight to the opinions of the non-examining state agency evaluators and erred in his consideration of Plaintiff's subjective complaints. Plaintiff argues that the ALJ erred in failing to consider the medical source opinions in the context of fibromyalgia. The Commissioner argues the ALJ adequately articulated his reasoning to give greater weight to the opinions of the non-treating sources and that the ALJ explained that one medical source opined that Plaintiff was malingering  After considering the medical opinions in question, the medical evidence of record, and the reasons given by the ALJ to discount Dr. Eider and Dr. Heisey's opinions, as well as the opinions of examining source Dr. Cooper, the Court determines the ALJ's evaluation of the medical opinions of Dr. Eider, Dr. Heisey, and Dr. Cooper is not supported by substantial evidence.

1

2

### 1.    Standard

When Plaintiff filed her initial disability application, medical opinions were to be assessed based on the nature of the medical relationship the claimant had with the medical provider.

Unlike the present regulations, which emphasize the importance of consistency and supportabilty when assessing a medical opinion, the prior regulations require that the ALJ consider other factors including the length and nature of the treatment relationship, and the expertise and experience of the physician rendering the opinion, with a greater weight afforded to the opinions of a treating source who has treated a patient consistency over a long period of time and/or a specialist rendering an opinion in her area of specialty.[32]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician's opinion, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by

---

[32] 20 C.F.R. §§ 404.1520(c)(1-5), 416.920(c)(1-5).

substantial evidence.[33] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[34] may be rejected for specific and germane reasons supported by substantial evidence.[35]

2. Medical Opinions Rendered by Treating and Examining Sources

a. *Dr. Eider*

On December 20, 20212, Plaintiff was examined by rheumatologist Wendy Eider, MD, at the request of her treating physician Kyle Heisey, MD, due to diffuse muscle pain.[36] Plaintiff

---

[33] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

[34] *See* 20 C.F.R. § 404.1502 (defining who is an acceptable medical source for claims filed before March 27, 2017).

[35] *Molina*, 674 F.3d at 1111. The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[36] AR 474-476.

reported both long-standing diffuse pain through her body, and a recent injury to her shoulder and leg due to a fall.[37] Plaintiff reported the following: a pain level of 10/10, difficulty with ADL's, poor sleep with both trouble staying asleep and nighttime pain, daytime stiffness, and increased pain in cold weather.[38] Plaintiff denied joint swelling and Raynaud's.[39]

On examination, Plaintiff had the following: loss of balance on tandem walk; decreased range of motion and pain on movement in the neck; decreased abduction, pain on rotation, and tenderness in the right shoulder; pain on palpation in the left shoulder; tenderness over the greater trochanters bilaterally; moderate tenderness along the thoracic spine; mild reversible kyphosis; decreased range of motion and tenderness in the lumbar spine; and multiple tender points to palpation.[40] A lab panel was normal, x-rays of the knees and hips were

---

[37] AR 474.

[38] *Id.*

[39] *Id.*

[40] AR 474-475.

normal, and x-rays of the spine showed grade 1 anteriolisthesis at L4-5 with moderate facet arthrosis.[41]

Dr. Eider assessed diffuse pain consistent with fibromyalgia associated with sleep disturbance and depression, a right shoulder/rotator cuff injury, depression, GERD, and osteoarthritis of the spine.[42] Dr. Eider recommended x-rays of the right shoulder, and a trial of gabapentin for pain control with Lyrica as an alternative if it is was not effective or could not be tolerated.[43]  Dr. Eider opined that Plaintiff needed to pace her activities, needed to take frequent rest periods and needed to get enough sleep to control her pain.[44] Dr. Eider also opined that it would be difficult for Plaintiff to participate successfully in the workforce.[45]

     *b.*    *Dr. Heisey*

---

[41] AR 475.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

Dr. Heisey completed 4 separate medical source statements.

> ### i.    January 2012 Opinion

On January 20, 2012, Dr. Heisey completed a check-box form at the request of the Department of Social and Health Services. [46] Dr. Heisey indicated that work function was impaired by a physical impairment and wrote that the impairment lasted 6 months.[47] Dr. Heisey indicated that Plaintiff could sit for most of the day with the ability to stand and walk for brief periods, and could lift a maximum of 10 pounds and lift up to 2 pounds frequently.[48] Dr. Heisey stated that Plaintiff was not scheduled for surgery and that it was not appropriate for Plaintiff to engage in training or employment activities at that time.[49]

> ### ii.    May 2012 Opinion

---

[46] AR 441-442.

[47] AR 441.

[48] Id.

[49] AR 442.

DISPOSITIVE ORDER - 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

On May 10, 2012, Dr. Heisey completed a handwritten medical form.[50]  Dr. Heisy wrote that Plaintiff had been a patient since November of 2010 and had been seen multiple times with the last visit that day.[51] He wrote that Plaintiff suffered from diffuse pain of unknown cause, GERD, and depression/dysthymia; and that her symptoms included diffuse pain, low energy, and normal lab work.[52] Dr. Heisey opined that Plaintiff would not need to lie down during the day and had no side effects from medication.[53] Dr. Heisey opined that Plaintiff's depression/dysthymia causes pain and that she would likely miss work due to her condition if she were to work a 40-hour workweek.[54]

*iii.    October 2014 Opinion*

---

[50] AR 439-440.

[51] AR 439.

[52] *Id.*

[53] *Id.*

[54] AR 439-440.

On October 21, 2013, Dr. Heisey completed a medical report at Plaintiff's request.[55] He wrote that Plaintiff was first treated in June 2011 and last treated on that day of October 21, 2013.[56] He wrote that she was diagnosed with a right rotator cuff tear, that her chief symptom was pain which worsened with movement, and that Plaintiff had an orthopedic evaluation and an MRI that showed a right shoulder rotator cuff tear.[57] Dr. Heisey stated that Plaintiff would not need to lie down during the day and that she had been treated with Naprosyn, gabapentin, antidepressants, and shoulder injections but that none of her medications had side effects.[58] Dr. Heisey stated that Plaintiff also had fibromyalgia which caused diffuse pain in her body and that the prognosis for her fibromyalgia was poor, although her rotator cuff injury would likely improve with surgery.[59]

---

[55] AR 764-766.

[56] AR 764.

[57] *Id.*

[58] *Id.*

[59] *Id.*

Dr. Heisey opined that working on a regular basis prior to surgery would cause further damage to Plaintiff's shoulder, opined that she would be absent from work for 4 or more days a month due to intolerable pain, and that Plaintiff would be unable to lift more than 2 pounds or stand and walk.[60]  He opined that Plaintiff could never handle or reach with the right arm but could constantly use the left arm, and that these limitations existed since December 20, 2012.[61] Dr. Heisey noted that Plaintiff was awaiting an appointment for orthopedic surgery.[62]

#### iv.    *March 2014 Opinion*

On March 12, 2014, Dr. Heisey completed a Physical Functional Evaluation Form at the request of the Department of Health and Social Services.[63] Dr. Heisey wrote that the limitations were valid for one year, that Plaintiff's chief symptom was right shoulder pain, that the

---

[60] AR 765.

[61] AR 765-766.

[62] AR 766.

[63] AR 1146-1148.

onset of Plaintiff's pain was a fall in February 20213, that a later orthopedical evaluation revealed a rotator cuff tear, and that Plaintiff was waiting for a second orthopedic evaluation after a second fall in February 2014 caused worsening pain.[64]

Dr. Heisey opined that Plaintiff suffered from a marked impairment in hearing and communicating due to dysthymia.[65] Dr. Heisey opined that Plaintiff suffered a marked impairment in lifting, carrying, handling, pushing, pulling, reaching, and stooping due to a right shoulder rotator cuff tear.[66] Dr. Heisey stated that diagnostic test results supporting his opinions were attached.[67]  Dr. Heisey opined that Plaintiff would be unable to meet the demands of sedentary work for 12 months and stated that an orthopedics evaluation was pending and Plaintiff may need surgery or physical therapy.[68]

---

[64] AR 1146.

[65] AR 1147.

[66] *Id.*

[67] *Id.*

[68] AR 1148.

Dr. Heisey attached a two-page treatment note from Plaintiff's March 12, 2014 office visit.[69] Dr. Heisey wrote that Plaintiff complained that a recent fall had exacerbated the pain in her right shoulder, in which she suffered a rotator cuff tear in a prior fall.[70] She complained of constant pain, worsened by lifting her arm and abduction.[71] On examination, Plaintiff had a flat affect, pain over the anterior shoulder, was able to actively abduct and lift her right arm to 90 degrees, and resisted passive movement of her arm beyond 90 degrees due to pain.[72] Dr. Heisey diagnosed right rotator cuff tendinitis, exacerbation of prior injury, possible adhesive capsulitis, and dysthymic disorder affecting overall level of chronically poor

---

[69] AR 1149-1150.

[70] AR 1149.

[71] *Id.*

[72] AR 1150.

functioning.[73] Dr. Heisey referred Plaintiff for a follow-up orthopedic consult.[74]

   c.   _Dr. Cooper_

   On April 9, 2012, Plaintiff was examined by psychologist Cecelia Cooper, PhD, at the request of the Commissioner.[75] Plaintiff's reported symptoms were GERD; pain in her lower back, arms, hips, wrists, and knees; difficulty sleeping; and chronic depression.[76] Plaintiff reported that she had fallen a year prior and injured herself and had lost balance and fallen again several times since but had no head injuries or broken bones.[77]

   Plaintiff reported depression since 2003, when she ended an abusive marriage and said she failed to renew her CNA license in 2003 and was unemployed for a year before going back to work as a laundry

---

[73] _Id._

[74] _Id._

[75] AR 427-433.

[76] AR 427.

[77] Id.

worker in a care home.[78] She was let go after three years and has been unemployed since.[79] Plaintiff reported that she cooks simple meals, that her daily household chores are painful, that she drops dishes at times, at times is accompanied to the store by her daughter, and that walking hurts her legs.[80] She reported that she watches TV and does not read, use a computer, or have hobbies.[81] She goes to bed at 9 to 10 pm but does not sleep through the night due to pain.[82] She reported that she socializes with her children and grandchildren as well as one of her three sisters and has no friends other than a neighbor or social clubs.[83] She does tasks slowly due to pain, avoids standing and lifting, and has recently had bouts of crying and nightmares.[84]

---

[78] AR 428.

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] AR 428-429.

[84] AR 429.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

On examination, Plaintiff was appropriately groomed with good eye contact, had difficulty hearing, had tangential responses, focused on her pain and balance issues, rarely smiled, and reported depression.[85] Dr. Cooper found that Plaintiff's thinking is somewhat concrete, that her immediate and short-term memory are impaired, that her ability to maintain attention and concentration is impaired but her ability to carry out 2 to 3 step instructions is not significantly impaired, and that her judgment is not impaired.[86] Dr. Cooper diagnosed adjustment disorder with mixed anxiety and depressed mood, chronic; pain disorder with both psychological factors and a general medical condition; GERD; and hip and back pain.[87] Dr. Cooper assessed a GAF score of 60, indicating moderate symptoms with serious difficulty in social or occupational functioning.[88] Dr. Cooper

---

[85] AR 429-430.

[86] AR 431-432.

[87] AR 432.

[88] AR 432, See, American Psychiatric Association. (2000). *Diagnostic and statistical manual of mental disorders* (4th ed., text rev.).

opined that Plaintiff's prognosis was guarded and found that she had difficulty complying with medication management partly due to her financial situation and partly due to forgetfulness.[89] Dr. Cooper suspected a learning disability or attention deficit disorder based on her responses and found her unable to handle funds due to problems with attention and memory.[90]

Dr. Cooper opined the following limitations:

Based on the results of this evaluation it is felt that [Plaintiff] is able to understand, remember and carry out instructions for tasks involving two or three unrelated steps. The rate at which she would do tasks would vary depending upon subjective feelings of pain and depression. She would have difficulty maintaining attention and concentration for extended periods of time. She would have difficulty with change. Her encoding of new information is poor. She would usually respond appropriately to normal hazards. Because of pain and depression she would require a moderate level of supervision to ensure she completes tasks correctly throughout a normal shift.

[Plaintiff] would usually get along with supervisors and coworkers. She did not describe problems with either in past places of employment. Her appearance would be acceptable in most casual settings. Because of depression

---

[89] AR 432.

[90] *Id.*

she might require occasional reminders to keep her surroundings in good order.[91]

### d.   *ARNP Titus*

On July 7, 2017, ARNP Debra Titus completed a medical report at Plaintiff's request.[92] She stated that Plaintiff established care in August 2016 and that she had had been diagnosed with a right shoulder rotator cuff tear and left carpal tunnel syndrome.[93] She stated that symptoms included pain, numbness, swelling, and decreased ROM, and that Plaintiff was scheduled to undergo a nerve conduction test in one week.[94] ARNP Titus noted that Plaintiff had attended two physical therapy sessions and suffered from both physical and mental impairments.[95] She opined that Plaintiff would miss 4 or more days of work a month and explained that she had no car and there was no

---

[91] AR 433.

[92] AR 1055-1057.

[93] AR 1055.

[94] *Id.*

[95] *Id.*

subway or bus available.[96] ARNP Titus opined that Plaintiff could not meet the demands of full-time sedentary work and that the limitation had existed since November 2013.[97]

    e. *Dr. Miller*

   On May 4, 2018, orthopedist Joshua Miller, MD, completed a medical statement at Plaintiff's request.[98] He stated that he had first seen Plaintiff on January 16, 2018, and last seen on April 18, 2018.[99] He noted that she had been diagnosed with a right shoulder rotator cuff injury and was being treated with narcotic medications and physical therapy following a surgery in March 2018, and that the medications caused drowsiness.[100]

   Dr. Miller opined that Plaintiff's prognosis was good and noted that she was in the early post-operative period and would likely miss 4

---

[96] *Id.*

[97] AR 1056-1057.

[98] AR 1130-1132.

[99] AR 1130.

[100] *Id.*

DISPOSITIVE ORDER - 28

days of work per month in the post-operative period.[101] Dr. Miller

opined that Plaintiff would be limited to sedentary work.[102]

3.  The ALJ's Consideration of the Medical Opinions

    a.  *The ALJ's consideration of Dr. Miller's opinion*

The ALJ articulated the following reasoning to support his

consideration of the opinion of Plaintiff's treating orthopedic surgeon

Dr. Miller:

> I give little weight the May 2018 report form completed by
> treating orthopedic provider Dr. D. Joshua Miller, MD
> (32F)[3]. The limitations indicated on this form are limited
> only to the postoperative period immediately after the
> claimant's March 2018 shoulder surgery. They are not
> permanent restrictions, and treatment records noted that the
> claimant experienced normal postoperative improvement.

Plaintiff argues that the ALJ erred in discrediting Dr. Miller's

opinions due to the limited time between Plaintiff's surgery and the

date the opinions was rendered, because although surgery had been

performed in March 2018, the surgery had been recommended as far

---

[101] AR 1131.

[102] *Id.*

back as 2013.[103] In his brief, the Commissioner counter-argues that Plaintiff improperly seeks to expand the scope of Dr. Miller's opinion because she fails to explain why she waited five years to have the surgery performed.[104]

The Court agrees and disagrees in part with both arguments and concludes that Plaintiff's failure to schedule surgery in a timelier manner is irrelevant. Within the four corners of the opinion itself, it is clear that Dr. Miller found the opined restrictions to apply during the post-operative period and not the period in which Plaintiff awaited surgery. Dr. Miller did not expand the scope of those opinions to the period in which Plaintiff was treated immediately prior to the surgery or the date on which surgery was recommended, several weeks in advance of the surgery. Dr. Miller's statement was that the opined limitations covered the period during which Plaintiff recovered from surgery and the Court declines to impose a further restriction.

---

[103] ECF No. 29.

[104] ECF No. 30.

1

2

The Court finds that the ALJ's consideration of Dr. Miller's opinion was substantially supported by the record.

3

4

   *b.*   <u>*The ALJ's consideration of Dr. Eider's opinion*</u>

5

6

   The ALJ articulated the following reasoning to support his consideration of the opinion of Plaintiff's treating rheumatologist,

7

Dr. Eider:

8

9

10

11

12

13

14

15

16

17

18

19

20

> I give little weight to the December 2012 statement of examining physician Dr. Eider, MD. She stated that the claimant "…needs to be able to pace her activities, take frequent rest periods…It will be difficult for her to participate successfully in the work force" (12F/7). This opinion is speculative and poorly supported. Dr. Eider had limited understanding of the overall evidence prior to assessing the above limitations because she saw the claimant on a single occasion and reviewed few outside records. She does not specify what she means by "pace her activities" and does not specify how many rest periods the claimant must have or how long each rest period must be. She does not provide specific rationale to support the limitations in her assessment. Nor does her examination seem to reflect findings reasonably consistent with her assessment. For instance, Dr. Eider noted that the claimant reported tenderness to palpation in many areas; she had reduced range of motion in the neck, back, and right shoulder; and had balance difficulty with tandem walking. But her neurological function was otherwise intact, with normal gait and normal strength. She presented as alert and in no acute distress. (12F/6-7).

21

22

23

   Initially, the Court notes that the ALJ failed to articulate any finding regarding Dr. Eider's 40-year specialization in rheumatology or

DISPOSITIVE ORDER - 31

her board-certification in internal medicine.[105] The prior regulations require that an ALJ consider the expertise of a medical source in the area of medicine in which they are rendering an opinion.[106]  This error is consequential in this case because the ALJ's finding that "Dr. Eider had limited understanding of the overall evidence prior to assessing the above limitations because she saw the claimant on a single occasion and reviewed few outside records" must be viewed in context that an experienced specialist would be expected to make an educated and skilled determination on the basis of a single examination where a less-skilled or specialized physician might not. It is common for a specialist to issue a consultative evaluation for a referring primary source based on a single visit on the basis of the relevant medical information provided.

Here, Dr. Eider, a rheumatologist with a vast degree of experience treating fibromyalgia, examined Plaintiff and reviewed

---

[105] www.healthcare6.com/physician/yakima-wa/wendy-r-eider-177828.html.

[106] 20 C.F.R. §§ 404.1520(c)(5), 416.920(c)(5).

relevant medical treatment notes and laboratory results provided by

Dr. Heisey and issued a definitive diagnosis and opinion as to

Plaintiff's limitations.  While there are factors that an ALJ might

consider more relevant and of greater significance than the source's

specialization, there was no indication here that the ALJ considered

such factors when weighing the opinion.

Additionally, the ALJ erred in his statement that "Dr. Eider

noted that the claimant reported tenderness to palpation in many

areas."[107]  This is a mischaracterization of the medical term

"tenderness on palpation," which is an objective test relying on the

clinician's observations of physiological responses such as skin color,

inflammatory responses, guarding, and spasm, and not upon the

patient's subjective complaint of pain.[108]  As noted, Dr. Eider is a

specialist with decades of experience in evaluating trigger points and it

---

[107] AR 1263-1264.

[108] National Institutes of Health, *Musculoskeletal Examination,*
*www.ncbi.nlm.nih.gov* (last viewed January 23, 2026).

was error for the ALJ to equate Dr. Eider's medical examination to simply accepting Plaintiff's subjective reports of pain.

Additionally, the Court concludes that Dr. Eider articulated her examination findings and explained that her opined limitations regarding pace and the need for rest were based primarily on Plaintiff's chronic depression and the fact that Plaintiff suffered from poor sleep that exacerbated her pain and sleep was needed to control it.[109]

In summary, the Court concludes that the ALJ's consideration of Dr. Eider's opinions did not meet the more stringent requirements of the prior regulations that apply in this case and that remand is warranted to properly assess Dr. Eider's opinion.

c.     *The ALJ's consideration of Dr. Heisey's opinions*

The Court concludes that the ALJ's error in considering Dr. Eider's opinion bled over to his consideration of Dr. Heisey's opinions. Because Dr. Heisey issued multiple opinions that were made both before and after his referral of Plaintiff to a specialist who ultimately diagnosed fibromyalgia, his opined limitations changed over

_____

[109] AR 475.

time.  In his last opinion, Dr. Heisey opined consistently with Dr. Eider that Plaintiff's depression exacerbated her fibromyalgia and other physical symptoms.

On remand, the ALJ should reevaluate Dr. Heisey's opinions.

### d.     *The ALJ's consideration of Dr. Cooper's opinion*

The ALJ articulated the following in support of his finding that the opinions of Dr. Coooper, with the exception of Plaintiff's ability to carry out three-step tasks, was not entitled to any weight:

> I give some weight to the April 2012 opinion of consultative examining physician, CeCelia Cooper, PhD. She opined that the claimant could understand, remember, and carry out simple tasks. (7F; duplicate at 10F/10-16). This assessment is consistent with Dr. Cooper's examination findings, which indicates that the claimant could follow a three-step task and count backward by threes. It is also consistent with the claimant's activities as discussed above at finding #5, which includes the ability to shop for herself and manage money. The rest of Dr. Coopers' assessment is equivocal and inconsistent with the record as a whole.

> She opined that the claimant would have difficulty maintaining attention and concentration for extended periods, and she would require a moderate level of supervision to ensure correct completion of assigned tasks. (7F/6-7). Dr. Cooper does not assess a precise level of severity in indicating the claimant "would have difficulty." Nor does her assessment of "moderate" levels of supervision reflect precise limitations. Dr. Cooper also ascribed limitations based on the claimant's report of physical pain. However, she is not a medically [sic] doctor and therefore is

not qualified to draw conclusions regarding that claimant's physical impairments.[110]

Plaintiff argues that the ALJ erred in his assessment for three reasons: that he erred in finding Dr. Cooper's opined limitations to be "equivocal" and imprecise, that he erred in making a conclusory statement that Dr. Cooper's opinions were inconsistent with the record without citing to any specific treatment note or record, and that the ALJ erred in finding that Dr. Cooper opined regarding physical limitations.[111]  The Commissioner counter-argues that the ALJ properly found that Dr. Coooper's descriptions of "moderate" limitations and "difficulty were vague and that the ALJ noted that Dr. Cooper did not offer any support for her opinion that Plaintiff's pain would interfere with her ability to work.[112]

The Court notes that the Commissioner offered no argument nor did he dispute that the ALJ did not cite to any evidence of record to

---

[110] AR 1261-1262.

[111] ECF No. 29.

[112] ECF No. 30.

support his finding that Dr. Cooper's opinion was "inconsistent with the record as a whole." The Court agrees that the ALJ offered no specific citation to the record beyond his conclusory finding.

The ALJ must consider whether a medical opinion is consistent with the longitudinal record. The consistency inquiry is not simply a comparison of the opinions given by medical sources. It is a comparison of the medical opinion in question to evidence from other medical sources and nonmedical sources, including Plaintiff's reported symptoms and the medical findings and observations.[113]

The ALJ must explain *why* the observations and findings in the summarized treatment notes and other aspects of the record are

---

[113] 20 C.F.R. §§ 404.1527, 416.927; *see Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017); *Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole and assess the amount of relevant evidence that supports the opinion).

*inconsistent* with the opined limitations.[114]  Here, the ALJ has failed to do so.

Additionally, the Court concludes that the ALJ's finding that Dr. Cooper's opinion that Plaintiff would require a moderate level of supervision to ensure correct completion of assignment was non-precise is erroneous.  The term "moderate" is one that is routinely used by the administration and which its own regulations provides is one of the five degrees of limitation of the five-point scale used to assess the paragraph B criteria.[115]  Dr. Cooper examined Plaintiff and reported her findings at the request of the Commissioner.  As a consultative examiner regularly contracted by the Administration, she was

---

[114] *See Burnett v. Bowen*, 930 F.3d 731, 736 (7th Cir. 1987); *Humane Soc. of U.S. v. Locke*, 626 F.3d 1040, 1054 (9th Cir. 2010 (requiring an agency to provide an explanation that "enables meaningful judicial review").

[115] See SSA - POMS: DI 24583.005 - *Evaluating Mental Impairments Using the Psychiatric Review Technique (PRT)* - 05/23/2023. (last viewed January 27, 2026.)

knowledgeable of the five-point scale of none, mild, moderate, marked, and extreme.

The Court concludes that on remand the ALJ should reevaluate Dr. Cooper's opinions in relation to her own thorough examination of Plaintiff and as to the record as a whole.

The Court concludes that a remand is warranted for the ALJ to properly consider the medical opinions and to obtain expert opinion if needed.

**B.    Plaintiff's Symptom Reports: The Court finds this issue moot.**

Plaintiff argues that the ALJ erred in considering her subjective complaints. As discussed above, the ALJ on remand shall be required to consider the medical evidence and consider Plaintiff's subjective complaints as to their consistency with the medical record and record as a whole.  Accordingly, this issue is moot.

**C.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or

simply to award benefits, is within the discretion of the court."[116] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[117]

The Court finds that reevaluation of the medical opinion evidence and symptom reports is necessary for a proper disability determination.

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four

---

[116] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[117] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke* 379 F.3d at 595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

of 42 U.S.C. § 405(g). A new ALJ is to be appointed in this matter.

2.     The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 29 and 30**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 9th day of February, 2026.

_____
EDWARD F. SHEA
Senior United States District Judge